IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VINCENT WHITE, individually and on
behalf of others similarly situated,
          Plaintiff,

v.                                                       Civil Action No. 3:18-cv-504-JAG

CITY OF RICHMOND, VIRGINIA,
          Defendant.

## OPINION

In this class action, the plaintiffs allege that the City of Richmond ("the City") Department of Social Services ("DSS") failed to pay them overtime wages in violation of the Fair Labor Standards Act ("FLSA"). The plaintiffs, current and former family service workers, contend that their supervisors discouraged them from reporting overtime hours, that they worked through lunch, and that they worked nights and weekends to manage their caseloads. The City has moved for summary judgment and for decertification or dismissal of the class action.[1]

The Court will grant the City's motion for summary judgment as to the plaintiffs' claims for on-call overtime wages and deny it as to all other claims. The claim for on-call overtime wages fails because the plaintiffs cannot show that their on-call time constitutes compensable work. A material factual dispute exists, however, as to whether the plaintiffs received all their overtime pay when they worked more than forty hours per week.

Because the plaintiffs cannot establish a claim for on-call overtime wages, the Court will dismiss plaintiffs Gwendolyn Jordan and Corey Campbell, who allege only on-call overtime claims.

---

[1] The Court heard argument and announced it decision on May 8, 2019. This Opinion states more fully the reasons for granting in part and denying in part the City's motions.

The Court will deny the City's motion to decertify the class action as to the remaining plaintiffs. Although the plaintiffs' claims differ from each other in some ways, they present enough common issues to merit a joint trial.

## I. BACKGROUND

Vincent White, the named plaintiff, worked for DSS as a family service worker until September, 2016. Family service workers conduct field investigations, maintain case files, interview witnesses, and complete other tasks related to foster care. DSS classifies family service workers as "non-exempt" under the FLSA, so the City must pay them one-and-one-half times their regular rates when they work more than forty hours per week. DSS uses a timekeeping system called RAPIDS to track employees' hours and to keep time records. Additionally, employees must submit work control logs to track time worked outside their normal work hours.

DSS also requires workers to remain on-call at certain times to respond to calls from the state hotline. DSS pays workers for time spent answering and responding to calls, but it does not pay them for time spent waiting to answer or respond. While on call, workers must respond to calls within thirty minutes to one hour. On-call workers use DSS-issued cell phones and may drive a City car home or pick up a car when responding to calls. Workers may engage in personal activities while on call so long as they can answer and respond to a call from the hotline.

On January 18, 2019, the Court conditionally certified the following class: "Present and Former Family Service Worker employees of the City of Richmond, Virginia Department of Social Services who were employed and who performed work anytime between July 20, 2015 through the present." (Dk. No. 23.) Since that time, twenty-two current or former workers filed opt-in notices to join the lawsuit. The parties voluntarily dismissed thirteen opt-in plaintiffs. Accordingly, White and nine opt-in plaintiffs remain in this case: Alice Regina Leftwich, Nakesha

Mills, Alfertia Hampton-Miller, Patricia Brown, Richard Turner, Courtenay Scott, Corey Campbell, Gwendolyn Jordan, and Michael Welshonce.

White, Leftwich, Mills, Hampton-Miller, Brown, Turner, and Scott say that they worked more than forty hours per week without receiving overtime pay.[2] White, Scott, and Turner contend that their supervisors discouraged them from reporting overtime. When White's overtime hours "were too high," his supervisor "express[ed] discomfort with the hours." (Dk. No. 41-2, at 38:4-13.) Scott stopped turning in overtime sheets because doing so "was frowned upon" and resulted in "a verbal battle . . . to even get paid for it." (Dk. No. 41-3, at 12:18-22.) Turner's supervisor "made it clear that . . . overtime would not be approved." (Dk. No. 41-4, at 17:13-16.)

White, Hampton-Miller, Mills, and Turner often worked through lunch, even though their RAPIDS entries reflected a one-hour deduction for the lunch hour. Mills, Brown, and Leftwich say their large caseloads required them to work overtime without pay.

The City has moved for summary judgment, arguing that the plaintiffs cannot establish all elements of their claim for unpaid overtime work and that the plaintiffs cannot show that their on-call time constitutes compensable work. The City also has moved for decertification or dismissal, asserting that the plaintiffs are not similarly situated under the FLSA.

---

[2] Leftwich and White estimate that they worked approximately 1-2 hours of overtime per week without compensation. Scott says that she "worked on average 2 hours per week overtime." (Dk. No. 34-12, at 4.) Mills asserts that she often worked "9-10 hours in one day," and that her supervisor did not approve her overtime hours. (Dk. No. 34-11, at 3.) Turner estimates that he "worked 12 hours per week of overtime" in 2016 and "approximately 20 hours per month in 2017." (Dk. No. 34-13, at 4.) Brown and Hampton-Miller do not recall exact dates or hours they worked overtime without pay.

## II. DISCUSSION

### A. *Summary Judgment*[3]

#### *1. Unpaid Overtime Wages*

"To establish a claim for unpaid overtime wages, [the plaintiffs] must establish by a preponderance of the evidence (1) that [they] worked overtime hours without compensation, (2) the 'amount and extent' of the work 'as a matter of just and reasonable inference,' and (3) that [the City] knew of the uncompensated overtime." *Talton v. I.H. Caffey Distrib. Co.*, 124 F. App'x 760, 763 (4th Cir. 2005) (per curiam).

The City says that the plaintiffs cannot establish that they worked overtime without pay, citing its detailed timekeeping records. But multiple plaintiffs testified that they stopped submitting overtime requests because their supervisors "express[ed] discomfort with" or "frowned upon" overtime hours. (Dk. No. 41-2, at 38:4-13; Dk. No. 41-3, at 12:18-22.) Other plaintiffs reported regularly working through lunch. The City's timekeeping records would not reflect those unreported hours. Moreover, "summary judgment is not warranted simply because [the plaintiffs] did not record all of [their] alleged overtime hours pursuant to the [City's] official time keeping system." *Ekeh v. Montgomery Cty.*, No. JKS 12-2450, 2014 WL 2154173, at *3 (D. Md. May 21, 2014). Accordingly, material factual disputes exist as to whether the plaintiffs worked overtime without pay, precluding summary judgment.

---

[3] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Second, the plaintiffs present evidence showing "the 'amount and extent' of the work 'as a matter of just and reasonable inference.'" *Talton*, 124 F. App'x at 763. Multiple plaintiffs report working approximately one to two hours of overtime per week and working during lunch. The plaintiffs' estimates, "while certainly subject to dispute and not conclusive, set[] forth specific facts from which a just and reasonable inference could be drawn." *Ekeh*, 2014 WL 2154173.

Finally, the evidence suggests that the City knew of the uncompensated overtime. For example, White says that he tried to report his overtime in RAPIDS, but that a supervisor "stated that [he] would not be paid any overtime beyond that which is reflected in the overtime logs." (Dk. No. 41-8, at ¶ m.) The plaintiffs' evidence creates a genuine factual dispute regarding the City's knowledge of the uncompensated overtime.

The City also moves for summary judgment on the issue of willfulness. The FLSA limitations period increases from two to three years for willful violations. *See* 29 U.S.C. § 255(a). "[O]nly those employers who either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] have willfully violated the statute." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015). The employer's willfulness is a question of fact and "[t]he burden to establish willfulness rests with the employee." *Id.*

The same factual disputes regarding the City's knowledge of the uncompensated overtime also preclude summary judgment on the issue of the City's willfulness. The plaintiffs say that reporting overtime resulted in "a verbal battle . . . with administration to even get paid for it." (Dk. No. 41-3, at 12:18-22.) They also contend that their supervisors and other DSS officials were on notice of their legal obligations, pointing to two previous lawsuits against the City for FLSA violations involving family service workers. *See Williams v. Md. Office Relocators*, 485 F. Supp. 2d 616, 621 (D. Md. 2007) (noting that proof of willfulness requires "evidence that the defendant

had previously been investigated for FLSA violations, or evidence of a scheme by the employer to cover-up FLSA violations"). Accordingly, a reasonable jury could find that the City "showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Calderon*, 809 F.3d at 111.

## 2. *On-Call Time*

The plaintiffs assert that the City owes them compensation for on-call time. To determine whether on-call time constitutes compensable work, courts consider "whether the employee was 'engaged to wait,' which would qualify on-call time as compensable, or 'waited to be engaged,' in which case on-call time would not be compensable." *Spencer v. Hyde Cty.*, 959 F. Supp. 721, 724 (E.D.N.C. 1997).

Courts consider four factors when "weigh[ing] the level of interference with the employee's private life: (1) whether the employee may carry a beeper or leave home; (2) the frequency of calls and the nature of the employer's demands; (3) the employee's ability to maintain a flexible 'on call' schedule and switch 'on call' shifts; and (4) whether the employee actually engaged in personal activities during 'on call' time." *Whitten v. City of Easley*, 62 F. App'x 477, 479 (4th Cir. 2003) (per curiam).

In this case, the workers' on-call time does not constitute compensable work. The first factor weighs against compensability because the City gives on-call workers cell phones, allowing them to leave home.[4] The second factor weighs slightly against compensability. Scott testified that "some days [workers] may not even get a call," (Dk. No. 41-3, at 36:16-23), and that the

---

[4] The plaintiffs argue that they must stay home during on-call shifts because they cannot use the City car for personal business. Although DSS gives on-call workers the option to drive a City car home when they begin an on-call shift, they also have the option to pick up a car as needed when responding to calls. Thus, workers remain free to leave home and attend to personal matters when not responding to calls.

6

frequency of the calls varies depending on the shift. Similarly, Johnson testified that she did not receive any calls on some nights and that she received between seven and ten calls on weekends. The record does not indicate whether on-call workers may switch shifts or maintain flexible schedules, so the third factor weighs in neither direction.

Because workers may engage in personal activities during on-call time, the fourth factor weighs against compensability. The plaintiffs say that on-call time restricts their freedom, but "the test is not whether the employee has substantially the same flexibility or freedom [she] would have if not on call." *Whitten*, 62 F. App'x at 480 (alteration in original). "Rather, the relevant inquiry is whether [the employee] may actually engage in personal activities during on call shifts." *Id.* Here, on-call workers may engage in personal activities so long as they can hear the phone ring and respond as needed. *See Cannon v. Vineland Housing Auth.*, 627 F. Supp. 2d 171, 179-80 (D.N.J. 2008) (finding the plaintiffs' on-call time non-compensable even though "they could not engage in a host of activities, ranging from going fishing to riding horses to going out of town for the weekend"). Because "the restrictions placed on the employee [do not] preclude using the time for personal pursuits," 29 C.F.R. § 553.221(d), the plaintiffs' on-call time does not constitute compensable work.

Thus, the Court dismisses the plaintiffs' claim for on-call overtime wages. Because Campbell and Jordan only assert on-call claims, the Court dismisses them as opt-in plaintiffs. Accordingly, the Court addresses the City's motion for decertification or dismissal only as to the remaining opt-in plaintiffs.

## B. Decertification or Dismissal[5]

"If, after discovery, it is apparent that plaintiffs are not similarly situated, the court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice." *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 468 (E.D. Va. 2014). To determine whether the opt-in plaintiffs are similarly situated, courts assess the "issues common to the proposed class that are central to the disposition of the FLSA claims and [whether] such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *Houston v. URS Corp.*, 591 F. Supp. 3d 827, 832 (E.D. Va. 2008). The common issues, however, need not be identical. "Rather, the inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members." *Id.*

When a defendant files a motion to decertify on "similarly situated" grounds, courts consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) defenses which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Sharer v. Tandberg, Inc.*, No. 1:06-cv-626, 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007). The plaintiffs bear the burden to show by a preponderance of the evidence that their claims are "similarly situated." *LaFleur*, 30 F. Supp. 3d at 468.

### 1. Similar Factual and Employment Settings

With respect to the first factor, courts consider "plaintiffs' job duties, geographic location, supervision, and salary as well as plaintiffs' evidence of a . . . policy that violates the FLSA."

---

[5] Courts apply a two-stage process to determine whether a group of plaintiffs qualifies as "similarly situated" under the FLSA. *See, e.g., Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). At the first stage, courts consider whether to conditionally certify the class under a lenient standard. At the second stage (also called the "decertification" or "merits" stage), courts consider whether the class will proceed to trial under a more stringent standard.

*LaFleur*, 30 F. Supp. 3d at 469. "Differences as to time actually worked, wages actually due and hours involved do not preclude a finding of a 'similarly situated' class." *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011). Here, all plaintiffs worked as family service workers in Richmond and performed similar duties.

Additionally, the plaintiffs present evidence that they "were victims of a common policy or scheme or plan that violated the law." *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006). The plaintiffs say that their supervisors discouraged them from logging their overtime hours, they worked through lunch, or they worked overtime with no pay to accommodate their caseloads. Although DSS used "a combination of practices . . . to accomplish unpaid off-the-clock work," *LaFleur*, 30 F. Supp. 3d at 471, the plaintiffs' testimony and declarations reveal a DSS policy of skirting its obligations under the FLSA.

### 2. *Individual Defenses*

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007). The City says that the plaintiffs assert "unique, particularized complaints that are factually specific." (Dk. No. 34, at 26.) But "[m]atters that differentiate plaintiffs by when and how they performed off-the-clock work can be established by representative testimony as opposed to individualized evidence." *LaFleur*, 30 F. Supp. 3d at 473. The City does not point to any other individual defenses, so the second factor weighs against decertification.

### 3. *Fairness and Procedural Considerations*

To assess fairness and procedural considerations, courts consider "the primary objectives of allowance of a collective action under § 216(b), namely (1) to lower costs to the plaintiffs

through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. The Court also must determine whether it can coherently manage the class in a manner that will not prejudice any party." *LaFleur*, 30 F. Supp. 3d at 475 (internal citations and quotation marks omitted). In this case, certification reduces the costs to the plaintiffs and allows them to combine their resources to resolve a "common issue." *Id.* Thus, the fairness and procedural considerations weigh against decertification. Accordingly, the remaining opt-in plaintiffs are similarly situated under the FLSA.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City's motion for summary judgment. The Court grants the motion as to the plaintiffs' claims for on-call overtime, but denies the motion as to all other claims. Additionally, the Court grants in part and denies in part the City's motion for decertification or dismissal. The Court grants the motion as to Jordan and Campbell, but denies the motion as to the remaining opt-in plaintiffs.

The Court issued an Order on these motions on May 8, 2019. (Dk. No. 55.)

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 16 May 2019
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge